Filed 4/15/21

**CERTIFIED FOR PARTIAL PUBLICATION**[*]

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>CAMILO VASQUEZ,<br><br>    Defendant and Appellant. | F078067<br><br>(Super. Ct. No. MCR056275)<br><br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Madera County.  Ernest J. LiCalsi, Judge.

Audrey R. Chavez, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Robert C. Nash and Ross K. Naughton, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

Defendant Camilo Vasquez was convicted in two trials of various sexual offenses arising out of a single act of rape of an 11-year-old girl, R.[1]  He was convicted in his first

---

[*] Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of parts I and III of the Discussion.

[1] We refer to the victim and her minor sister by their first initials to protect their privacy.

trial of lewd and lascivious acts upon a child (Pen. Code, § 288, subd. (a)),[2] and in his second trial of rape by force or fear (§ 261, subd. (a)(2)) and aggravated sexual assault of a child by means of rape (§§ 269, subd. (a)(1), 261, subds. (a)(2), (a)(6)). The second jury also found multiple special allegations true, including that Vasquez engaged in tying and binding during the commission of the act. The trial court imposed a term of 25 years to life on the rape count, and imposed but stayed terms of 25 years to life on the lewd and lascivious act count and 15 years to life on the aggravated sexual assault count.

Vasquez raises three issues on appeal. First, he claims his rape and aggravated sexual assault of a child by means of rape convictions must be reversed because the trial court did not instruct the jury on unlawful sexual intercourse with a minor ("statutory rape") as a lesser included offense of aggravated sexual assault of a child by means of rape. Second, he contends his conviction for aggravated sexual assault of a child by means of rape must be vacated because he was also found guilty of rape, a necessarily included offense, and multiple convictions may not be based on necessarily included offenses. The People agree on that issue. Third, he argues that three errors combined to lessen the prosecution's burden of proof in the second trial on the retrial counts and on the special allegations.

We agree with the parties that either the rape conviction or aggravated sexual assault of a child by means of rape conviction must be vacated, and we will acquiesce to their mutual request to vacate the latter. We otherwise affirm.

## STATEMENT OF THE CASE

On November 1, 2017, the Madera County District Attorney filed a three-count information against Vasquez. Count 1 alleged forcible rape (§ 261, subd. (a)(2)),[3] with

---

[2] Undesignated statutory references are to the Penal Code.

[3] Section 261, subdivision (a), reads: "Rape is an act of sexual intercourse accomplished with a person not the spouse of the perpetrator, under any of the following circumstances:"

2.

the further allegations that the victim was under 14 years of age and that in committing the offense Vasquez had tied and bound the victim. (§ 667.61, subds. (e), (j)(2).) Count 2 alleged lewd and lascivious acts upon a child under the age of 14 years (§ 288, subd. (a)), with the further allegation that Vasquez had tied and bound the victim (§ 667.61, subds. (e) and (j)(2)). Count 3 alleged aggravated sexual assault upon a child under 14 years of age and seven or more years younger than the perpetrator, accomplished by means of rape (§§ 269, subd. (a)(1), 261, subds. (a)(2), (a)(6)).[4]

A jury trial started on May 10, 2018. After three days of trial and two days of deliberation, the jury found Vasquez guilty in count 2 of committing a lewd and lascivious act upon R., but could not reach a verdict on counts 1 or 3, or on the special allegation in count 2 that Vasquez had tied and bound R. A mistrial was declared as to counts 1 and 3.

On July 26, 2018, a second jury was sworn to try the mistried counts as well as the tying and binding special allegation on the lewd and lascivious conduct count. After three days of trial and one day of deliberation, the jury convicted Vasquez of the two mistried counts, and found true the special allegations pursuant to section 667.61, subdivision (e) and (j)(2).

On September 5, 2018, Vasquez was sentenced to 25 years to life on count one (forcible rape). Pursuant to section 654, the court also imposed but stayed a term of 25 years to life on count 2 (lewd and lascivious conduct) as well as a term of 15 years to

---

Paragraph (2) of subdivision (a) reads: "Where it is accomplished against a person's will by means of force, violence, duress, menace, or fear of immediate and unlawful bodily injury on the person or another."

[4] Section 269, subdivision (a), reads: "Any person who commits any of the following acts upon a child who is under 14 years of age and seven or more years younger than the person is guilty of aggravated sexual assault of a child:"

Paragraph (1) of subdivision (a) reads: "Rape, in violation of paragraph (2) or (6) of subdivision (a) of Section 261."

life on count 3 (aggravated sexual assault on a minor).  The court also imposed various fines and fees.

## STATEMENT OF FACTS[5]

R. was an 11-year-old girl at the time of the events at issue in this case.  In April 2017, she lived on a property that had a main house and two trailers in the back.  She lived in one of the trailers with her father and 14-year-old sister, E., and Vasquez lived by himself in the other trailer.  The Cortez family of four owned the property and lived in the main house.

The Cortezes attended a party on the evening of April 15, 2017.  While the family was gone, R. went to take a shower in their house because her trailer did not have a shower.  When she came out of the bathroom after her shower, dressed in shorts and a shirt, Vasquez was outside the door.  He "grabbed" her by her hands and told her she was pretty.  She told him to let go and said she was going to tell her dad, but he did not let go.  She was scared and wanted to leave.  He then "dropped" or "threw" her to the floor[6] and tied her hands with a "thread."[7]  He pulled off her shorts and underwear, then got down to his knees and pulled down his pants and underwear.  He told her to shut up.  He put her legs over his shoulders and inserted his penis into her vagina.  This felt "very bad" and "it hurt."  She did not want to have sex with Vasquez.  When Vasquez finished, he told her he would kill her dad and rape her again if she told her dad.

R. returned to her trailer and did not tell her sister or father what happened.  Her father was at work at the time, as he worked every day without a day off.  R. told her

---

[5] The evidence produced at the two trials was substantially the same.

[6] R. used the words "dropped," "pulled," and "threw" to describe how Vasquez took her to the ground.

[7] In her forensic interview, she described the tying material as a "thread."  In the second trial, she initially described the material as being like a "string" or "thread," later described it as being "like a rope," and ultimately clarified it was similar to a shoe string.

school teacher three days later and the school notified police.  R. told her story to the police and to a child forensic interviewer.  R.'s session with the forensic interviewer was video-recorded, and the video was played at both trials.

Vasquez spoke with two police officers when he was arrested and his interview was recorded and played at both trials.  Vasquez was born on December 6, 1982, making him 34 years old at the time of the offense.  When asked near the beginning of the interview if he knew why he was in police custody, Vasquez said, "No."  However, he later admitted to having sex with R., but maintained he did not do anything wrong.  His version of the sexual encounter was as follows:

He opened the door of the Cortez's bathroom, not knowing R. was in there.  She said, "Hey, what are you doing?"  Vasquez said he was going to the bathroom.  She told Vasquez she "wanted to do something with him," and then she exited the bathroom and Vasquez went in.

Later, Vasquez was in his trailer trying to get his television to turn on when R. entered.  R. sat down next to him and then hugged him around his neck.  Vasquez told her not to do that because she was a "little girl."  R. said, "I'm not a little girl," and told him she needed something from him.  She pulled him by the hand and told him not to be afraid.  R. then took off her pants and underwear and he took off his pants and underwear.  R. then "forced" herself onto Vasquez and began having sex with him.  He did not want to have sex with her, but she "took it by force" and "made [him]" do it.  They had sex with R. on top of Vasquez.  He surmised she was sexually experienced because she told him to make sure his "liquid" came out outside of her.  She told him she did not want him to tell her father or sister.  The police interviewers asked him how long they had sex for and suggested the encounter perhaps lasted one to two minutes, and Vasquez said he ejaculated in only 30 seconds because he did not want to have sex with her.

Vasquez also told police R. and E. watch a lot of pornography.  He asked the girls if their father knew they watched pornography, and the girls told him their father did not

5.

know. Vasquez told the interviewing officers he thought R. was 13 or 14 and E. was 15. When they asked him if he thought he did anything wrong, Vasquez said, "No. I didn't do anything bad to her." When asked if he blamed R, he said "Yeah—[I] know that she's a- 11 years old like you say, but I didn't do any of that to her because she like took it by force and I didn't want any of that." He said the encounter was R.'s fault.

### *Prior acts of lewd and lascivious conduct*

R. had been living in her trailer for about a month at the time of the incident. Vasquez left candy and soft drinks for R. and E. when they first moved onto the property. While R.'s father was at work, Vasquez came into their trailer and "touched" R. and E. "every day." He "stroked [R.'s] legs" and "grabbed her breasts." He also touched her on her hand and back. She felt "in danger" when Vasquez would visit their trailer. On two occasions Vasquez touched R. under her clothes, and on the rest of the occasions over her clothes. He would stop the touching when E. turned to look. R. stated Vasquez touched E.'s legs too, but she did not realize it because she was busy with her cell phone. E. did not testify at trial and did not disclose any abuse to police.

On one occasion, Vasquez came and knocked on their trailer door, which R. had tied closed to prevent him from entering. E. let him in, then sat down to use her cell phone. Vasquez asked R. to go to his trailer to help him tidy up, but R. told him he could clean his room himself. Vasquez told E. to give R. permission to go with him, and E. told R. to go, but R. did not go. E. then decided to go to Vasquez's trailer, and R. went with her because she did not want E. to go alone. Vasquez ended up cleaning his trailer by himself, and returned to R. and E.'s trailer and asked E. what she was doing. He stayed and talked to E. for a while, asking if she had a boyfriend.

Vasquez did not testify and the defense did not present a case at either trial.

6.

## DISCUSSION

### I.  Vasquez was not entitled to a statutory rape instruction

Vasquez first contends the trial court had a duty to instruct the jury in both trials with statutory rape even though he did not request such an instruction.[8]  He argues statutory rape is a lesser included offense of aggravated sexual assault of a minor by means of rape, and asserts the judge was required to give the instruction sua sponte because there was substantial evidence to support a finding that he only committed statutory rape.  The People agree statutory rape is a lesser included offense, but argue there was not substantial evidence from which the jury could conclude Vasquez committed statutory rape but not forcible rape.  We agree with the People.

A lesser offense is necessarily included within a charged offense "if either the statutory elements of the greater offense, or the facts actually alleged in the accusatory pleading, include all the elements of the lesser offense, such that the greater cannot be committed without also committing the lesser."  (*People v. Birks* (1998) 19 Cal.4th 108, 117.)  The parties are correct that statutory rape is a lesser included offense of aggravated sexual assault of a child by means of rape under either test.

The elements of aggravated sexual assault (rape) of a child are (1) sexual intercourse with a non-spouse, (2) against the victim's will by "force, violence, duress, menace, or fear of immediate and unlawful bodily injury on the person or another," (3) a victim under 14 years old, and (4) a defendant at least 7 years older than the victim. (§§ 269, 261, subd. (a)(2).)  Statutory rape is defined as "an act of sexual intercourse accomplished with a person who is not the spouse of the perpetrator, if the person is a minor."  (§ 261.5, subd. (a).)  Because aggravated sexual assault (rape) of a child cannot

---

[8] In the first trial, the court stated during the jury instruction conference that it could not identify any lesser included offenses that it should instruct the jury with as to counts 1 or 3.  The court asked the parties if this understanding was correct, and defense counsel answered, "Yes."

be committed without committing an act of sexual intercourse with a non-spouse minor, statutory rape is a lesser included offense of aggravated sexual assault/forcible rape under the statutory elements test. Statutory rape is also a lesser included offense under the accusatory pleading test here because counts 1 and 3 alleged that Vasquez committed a violation of rape under section 261, subdivision (a)(2) upon R. who was under the age of 14.

Vasquez argues substantial evidence required the trial court to instruct on the lesser included offense of statutory rape. A trial court must instruct sua sponte on any lesser included offense "which find[s] substantial support in the evidence." (*People v. Breverman* (1998) 19 Cal.4th 142, 162.) "[T]he existence of *any* evidence, no matter how weak will not justify instructions on a lesser included offense, but such instructions are required whenever evidence that the defendant is guilty only of the lesser offense is substantial enough to merit consideration by the jury. [Citations.] Substantial evidence in this context is evidence from which a jury composed of reasonable [persons] could … conclude[ ] that the lesser offense, but not the greater, was committed." (*People v. Sattiewhite* (2014) 59 Cal.4th 446, 477, quotation marks omitted.) " ' "On appeal, we review independently the question whether the trial court failed to instruct on a lesser included offense." ' " (*People v. Souza* (2012) 54 Cal.4th 90, 115–116.)

Vasquez argues there was substantial evidence to support a jury finding that he committed statutory rape, but not forcible rape. His argument focuses solely on the element of force or fear, and we can discern two points of emphasis. The first point is that, although Vasquez admitted having sex with R., his assertion to police that R. instigated the encounter and his denial of having tied her constituted substantial evidence of an absence of force or fear. This point is relevant to *his*, as opposed to R.'s, account of the sexual encounter. His second point is that the evidence of tying and binding was weak enough for the jury to conclude that she was not actually restrained, and hence there

8.

was an absence of force or fear.[9]  This point is apparently directed at R.'s account of the sexual encounter.  Neither point has merit.

Regarding his first point, he notes that he asserted in his interview that R. instigated the sexual encounter and denied having tied her, but does not offer any analysis as to how these assertions constituted substantial evidence to support a finding of an absence of force or fear.  We conclude these assertions, considered in light of his other assertions, could not support such a finding.  First, he did not merely assert that R. instigated the encounter.  Rather, he adamantly maintained that 11-year-old R. overpowered him and took him by "force" against his will.  He repeatedly stated he did not want to have sex with her, but she forced it on him.  He also resolutely maintained he did nothing wrong and bore no responsibility because the whole encounter was against his will.  Particularly incredible was his assertion that his ejaculating in only 30 seconds was evidence of his lack of desire to have sex with her.

While we note that Vasquez uttered to himself while praying at the beginning of his interview, "Why did I fall into temptation?", this utterance pales in significance against the sheer implausibility of his account of the sexual encounter.  Also, Vasquez never said anything that would suggest he was tempted to engage in consensual sex with R. as opposed to tempted to rape R.  We do not see any possibility that a reasonable jury would have convicted him of statutory rape instead of forcible rape based on his account of the sexual encounter.

We turn now to his second point that we perceive to be directed at R.'s account of the sexual encounter.  He emphasizes the uncertain nature of the evidence of tying and binding.  At various times, R. described the tying material as a thread, string, rope, and shoe string-like material.  Vasquez argues this uncertainty created an issue as to whether

---

[9] Vasquez does not formally challenge the sufficiency of the evidence supporting the true finding on the tying and binding allegation.

the material was substantial enough to actually restrain her.  His argument follows that if the jury were to conclude there was insufficient evidence of tying and binding, it could have found an absence of force.

First, this argument overlooks that the jury found true the tying and binding allegation.  That aside, Vasquez also overlooks the abundance of other evidence of force and fear besides the act of tying and binding.  R. unequivocally stated Vasquez grabbed her by her hand and would not let go, forced her to the ground, pulled down her pants and underwear, and had sex with her against her will.  R. clearly stated she wanted to leave the bathroom area, did not want to have sex with him, and was scared.  She also stated Vasquez threatened to kill her father if she told him she had been raped.  This plethora of substantial evidence could have supported a finding of force or fear.

Additionally, Vasquez asserts the mistrial on the rape-related counts is evidence that a reasonable jury could have found insufficient evidence of force and acquitted him of the rape-related offenses on that basis.  We disagree.  The first jury was deadlocked 11 to 1 on the rape-related counts, and we can deduce that the eleven jurors voted "guilty" based on the fact the jury was equipoised 6 to 6 on the tying and binding allegation.  We find it highly unlikely that giving a statutory rape instruction would have caused those 11 jurors to vote to acquit on counts 1 or 3.

The trial court had no sua sponte duty to instruct on statutory rape because there was no substantial evidence to support a finding that the offenses were committed without the use of force or fear.

## II.     The aggravated sexual assault conviction must be vacated

Vasquez was convicted of both rape and aggravated sexual assault of a minor by means of rape.  The former is a necessarily included offense of the latter.  The court imposed a term of 25 years to life on the rape count, and imposed but stayed a term of 15 years to life on the aggravated sexual assault count.  Vasquez and the People agree that one of the convictions must be vacated because "multiple convictions may *not* be

10.

based on necessarily included offenses." (*People v. Pearson* (1986) 42 Cal.3d 151, 355 (*Pearson*).) They also mutually agree the aggravated sexual assault conviction should be vacated despite that it is the greater offense and the rape is the necessarily included offense. The parties' reasoning for vacating the greater offense here is that the rape count actually carries the longer prison term, after factoring in the applicable sentencing enhancements. We agree the aggravated sexual assault conviction (count 3) should be vacated.

As to rape (§ 261, subd. (a)(2)), which was both a standalone offense charged in count 1 and the underlying offense of count 3, the court instructed the jury on the elements of the offense using CALCRIM No. 1000, which states in part:

"To prove that the defendant is guilty of this crime, the People must prove that:

"1. The defendant had sexual intercourse with a woman;

"2. He and the woman were not married to each other at the time of the intercourse;

"3. The woman did not consent to the intercourse; [¶] AND

"4. The defendant accomplished the intercourse by force, violence, duress, menace, or fear of immediate and unlawful bodily injury to the woman or to someone else."

The court instructed the jury on count 3, with aggravated sexual assault of a minor (§ 269, subd. (a)) based on the qualifying predicate offense of forcible rape (§ 261, subd. (a)(2)), with CALCRIM No. 1123 as follows:

"To prove that the defendant is guilty of this crime, the People must prove that:

"1. The defendant committed forcible rape on another person; [¶] AND

"2. When the defendant acted, the other person was under the age of 14 years and was at least seven years younger than the defendant.

11.

"To decide whether the defendant committed forcible rape, please refer to the separate instruction (CALCRIM [No.] 1000) that I have given you on that crime."

Rape is indisputably a lesser included offense of aggravated sexual assault of a minor based on the predicate offense of forcible rape, and "multiple convictions may *not* be based on necessarily included offenses." (*Pearson, supra,* 42 Cal.3d 351, 355.) One may think then that the rape count must be vacated, but both parties realize that doing so here would result in an anomalous oddity because the rape count carries a longer prison sentence.

Rape (§ 261, subd. (a)(2)) is normally punishable by three, six, or eight years in prison. (§ 264, subd. (a).) If the victim is a child under 14 years of age, the term of imprisonment is increased to 9, 11, or 13 years. (§ 264, subd. (c)(1).) Further, if the victim is a child under 14 years of age *and* the defendant engaged in tying or binding of the victim, as was the case here, the required punishment under section 667.61, subdivision (j)(2) is 25 years to life.

However, for the crime of aggravated sexual assault of a child who is under 14 years of age and seven or more years younger than the offender, accomplished by rape in violation of section 261, subdivision (a)(2), the required punishment is only 15 years to life. (§ 269, subd. (b).)

The reason for this unexpected disparity lies in section 667.61, That section contains an aggravated sentencing scheme for certain enumerated sex offenses committed under certain circumstances. Violation of section 261, subdivision (a)(2) (rape), is one of the enumerated crimes, but violation of section 269, subdivision (b) (aggravated sexual assault), is not. (§ 667.61, subd. (c).) Therefore, if a 34-year-old defendant commits the same act of rape as Vasquez—i.e., rape of an 11-year-old with tying and binding—and is convicted only of rape as a standalone offense, he will receive 25 years to life. (§ 667.61, subd. (j)(2).) However, if that same hypothetical defendant is convicted only of a single

count of aggravated sexual assault of a minor by means of rape, he will receive only 15 years to life.

We believe an oversight by the Legislature may be responsible for this anomaly in the sentencing provisions relevant here. The question for us, now, is how to remedy it. The parties agree the aggravated sexual assault count should be reversed, and we concur.

The parties correctly note the generally understood rule is that appellate courts should "reverse the conviction for the included offense and direct the entry of a dismissal of the less serious crime." (*People v. Chan* (2005) 128 Cal.App.4th 408, 421.) Since the included offense is usually the "less serious crime," meaning it carries lesser punishment, this rule usually works without issue. Here, though, the included offense, rape, carries the longer prison sentence.

In this situation, the remedy should be to vacate the conviction of the "greater offense," which is the aggravated sexual assault. Two basic legal principles combine to justify this remedy. First, section 654 provides "[a]n act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment …." (§ 654, subd. (a).) Second, as our Supreme Court has explained, the reason for proscribing convictions on both a greater offense and necessarily included offense is that permitting both convictions "would effectively permit two convictions for the lesser offense." (*People v. Ceja* (2010) 49 Cal.4th 1, 6.) However, we can find no authority requiring that the necessarily included offense must always be the one vacated, and we would not expect to find any. Combining these two stated principles, we conclude the appropriate thing to do here is to allow the offense that provides for the longer potential prison term to stand, which is the rape (count 1), and vacate the other offense.[10]

---

[10] The People alternatively assert we should remand the case so that the prosecution can seek to vacate the conviction on count 3. We do not think it is necessary to remand the case because the parties agree count 3 should be reversed.

**III. No errors reduced the prosecution's burden of proof on counts 1 and 3 in the second trial**

Vasquez contends that, in the second trial, three errors combined to lessen the prosecution's burden of proof on counts 1 and 3 and on the enhancement allegations. These alleged errors consist in: (1) a difference in the wording between the "true" and "not true" versions of the verdict form for the tying and binding allegation; (2) the trial court telling the jury, in response to a note, that it was "conceded" that Vasquez had committed a lewd and lascivious act upon a child; and (3) unclear language in the CALCRIM No. 1191A "Evidence of Uncharged Sex Offense" instruction given to the jury.

**A. Basic law**

It is well established the federal Constitution's Due Process Clause requires the prosecution to prove beyond a reasonable doubt "every fact necessary to constitute the crime with which [the defendant] is charged." (*In re Winship* (1970) 397 U.S. 358, 364.) Where the claim is that jury instructions (or other court directions) impermissibly reduced the prosecution's burden of proof, the question "is whether there is a reasonable likelihood that the jury understood [them] to allow conviction based on proof insufficient to meet the *Winship* standard." (*Victor v. Nebraska* (1994) 511 U.S. 1, 6.) In answering that question, "[t]he independent or de novo standard of review is applicable ...." (*People v. Posey* (2004) 32 Cal.4th 193, 218.)

**B. Vasquez's claims of error**

*1. Verdict form*

In the second trial, the jury was given separate verdict forms for true and not true findings on the tying and binding allegation as to the lewd and lascivious conduct charge. The one providing for a true finding read:

"We the jury in the above entitled matter find ***True*** the allegation that the defendant, in the commission of a lewd and lascivious act upon a

14.

child under age 14, engaged in the tying and binding of [R.] and she was under the age of 14 years old."

The one providing for a not true finding read:

"We the jury in the above entitled matter, with the defendant having been found *Guilty* of committing a violation of Penal Code section 288(a), further find *Not True* the allegation that the defendant, in the commission of a lewd and lascivious act upon a child under age 14, engaged in the tying and binding of [R.]."

Vasquez complains that not only did the phrasing of the latter form "inform the jury of the prior conviction, but the differences in the wording of the guilty and not guilty [*sic*] forms created the danger that the jury would sense a dog whistle—'don't find the allegation not true, he has been convicted!' "

The People contend the issue was forfeited by failure to object below. We agree. While section 1259 does permit review of certain "instruction[s] given, refused or modified" without objection below, Vasquez's claim concerning the wording of a verdict form is not one that seeks review of an "instruction given, refused, or modified." (§ 1259.) Moreover, our Supreme Court has held that "[a]n objection to jury verdict forms is generally deemed waived if not raised in the trial court." (*People v. Toro* (1989) 47 Cal.3d 966, 976, fn. 6, disapproved on other grounds in *People v. Guiuan* (1998) 18 Cal.4th 558, 568, fn. 3.) Here, Vasquez did not raise an issue regarding the wording of any verdict form and therefore the issue has not been preserved for review. (See *People v. Jones* (2003) 29 Cal.4th 1229, 1259; *People v. Bolin* (1998) 18 Cal.4th 297, 330; *People v. Webster* (1991) 54 Cal.3d 411, 446.)

### 2. Trial court's response to jury's question

During deliberations, the jurors sent the judge a note requesting "further explanation of all charges to be signed" and "understanding more [*sic*] special allegation." The parties and the court, outside the jury's presence, discussed how the court should respond to these questions. Here is the relevant part of this discussion:

15.

"THE COURT: No. 4, they want further explanation of all charges to be signed understanding more of the special allegations. So I thought I would tell them they first have to decide guilty or not guilty of rape. If they sign not guilty, they sign no further forms as to that charge. If they sign guilty, then they have to decide if the special allegations with respect to the rape are true. They'll sign them if true or not true, if they come to a unanimous verdict, and the same thing for the aggravated sexual assault.

"On the third allegation I'll tell them that they are, just for this purpose, they are to assume that it's the same act and that he—that they are to assume lewd and lascivious did occur, and they are not to debate that issue. They're only to decide when it happened and did the defendant tie and bind the victim. That's all they have to decide is the last allegation.

"[THE PROSECUTOR]: I think it's reasonable.

"[DEFENSE COUNSEL]: There isn't a horrible jury instruction on how to answer to fill it out. It always makes it worse.

"THE COURT: That's with lesser included.

"[DEFENSE COUNSEL]: I don't think we need it.

"[THE PROSECUTOR]: It usually makes it worse.

"[DEFENSE ATTORNEY]: It does.

"THE COURT: All right. So we'll bring the jury in."

The court brought the jury into the courtroom and told them, in part:

"THE COURT: You have one more issue and it's based that [*sic*] [R.] said it happened outside the bathroom. That is that in committing a lewd and lascivious upon a child under the age of 14, the defendant tied and bound [R.]. The issue of whether he committed a lewd and lascivious on a child under the age of 14 is not before you. **That is conceded**, so all you have to decide is when he did that, did he tie and bind [R.]?

"If you can't unanimously agree on any one of the issues I just talked about guilty, or not guilty, or true or not true of the special allegations, then you don't sign any forms with respect to each one of those. Only what you unanimously agree to, you would sign. Does that answer all the questions?

"JUROR NO. 3: Yes."

16.

(Emphasis added.)

Vasquez challenges the trial court's statement that "[t]he issue of whether he committed a lewd and lascivious on a child under the age of 14" was "conceded." He notes the trial court told the parties outside the jury's presence that it would instruct the jury to "assume" a lewd a lascivious act occurred, not that such an act was "conceded." He explains that while he did concede his guilt of a lewd and lascivious act at the first trial, he did so for a tactical reason absent at the second trial.

However, Vasquez's failure to object to the trial court's statement to the jury forfeited his challenge. (*People v. Martinez* (2003) 31 Cal.4th 673, 698 ["Defendant made no objection to the court's explanatory response to the jury's questions and[] accordingly waived his present argument."]; Cf. *People v. Boyette* (2002) 29 Cal.4th 381, 429.) But forfeiture aside, we find no error in the court's using the word "conceded" because we see no meaningful difference between telling a jury to "assume" a defendant committed an act and telling a jury the defendant's commission of the act was "conceded." The jury in either case would understand they are to accept as a given that the defendant committed the act.

### 3. *The propensity instruction*

In the second trial, one of the instructions provided that if the jury decided by a preponderance of the evidence that Vasquez committed lewd and lascivious acts other than the lewd and lascivious acts that form the basis of the charged offenses in this case, it could conclude Vasquez was disposed or inclined to commit sexual offenses. Vasquez does not argue that this kind of instruction should not have been given at all, but that the instruction as worded "failed to meaningfully distinguish between the lewd and lascivious act the jury was told was 'conceded' and any other alleged lewd and lascivious act" such that "the jury was thereby given the opportunity to consider evidence of the very same act as that alleged to constitute rape by a preponderance of the evidence to find

17.

[him] guilty of the rape charges."  The People contend that this issue was forfeited, and that in any event the instruction was not erroneous.  We agree with the People.

The instruction in question was a synthesis of CALCRIM No. 1191A and CALCRIM No. 1110, and read in relevant part:[11]

> "The People presented evidence that the defendant committed the crime of lewd and lascivious act on a child under the age of 14 years **that involved acts other than the act for which he has been charged**. This crime is defined for you in these instructions.
>
> "You may consider this evidence only if the People have proved by a preponderance of the evidence that the defendant in fact committed the uncharged offense. Proof by a preponderance of the evidence is a different burden of proof from proof beyond a reasonable doubt. A fact is proved by a preponderance of the evidence if you conclude that it is more likely than not that the fact is true.
>
> "If the People have not met this burden of proof, you must disregard this evidence entirely.
>
> "If you decide that the defendant committed the uncharged offense or offenses, you may, but are not required to, conclude from that evidence that the defendant was disposed or inclined to commit sexual offenses, and based on that decision, also conclude that the defendant was likely to commit and did commit the acts charged.  If you conclude that the defendant committed the uncharged offense, that conclusion is only one factor to consider along with all the other evidence.  It is not sufficient by itself to prove that the defendant is guilty of any of the crimes charged.  The People must still prove each charge beyond a reasonable doubt.
>
> "To prove that the defendant is guilty of a lewd and lascivious act upon a child under the age of 14 years of age, the People must prove [the standard elements of the lewd-and-lascivious instruction CALCRIM No. 1110]...."  (Emphasis added.)

The People contend the issue is forfeited because " '[a] party may not complain on appeal that an instruction correct in law and responsive to the evidence was too general or

[11] CALCRIM No. 1191A is entitled "Evidence of Uncharged Sex Offense." CALCRIM No. 1110 is entitled "Lewd or Lascivious Act:  Child Under 14 Years (Pen. Code, § 288(a))" and is the pattern instruction for that offense.

incomplete unless the party has requested appropriate clarifying or amplifying language.' " (*People v. Landry* (2016) 2 Cal.5th 52, 99—100.)  Vasquez counters that under section 1259 a reviewing court may nevertheless review any instruction even absent an objection "if the substantial rights of the defendant were affected thereby." " 'Ascertaining whether claimed instructional error affected the substantial rights of the defendant necessarily requires an examination of the merits of the claim—at least to the extent of ascertaining whether the asserted error would result in prejudice if error it was.' " (*People v. Ramos* (2008) 163 Cal.App.4th 1082, 1087.)  Because Vasquez argues the claimed instructional error affected his substantial rights, we reach the merits of his claim.

We disagree with Vasquez that the instruction as worded failed to meaningfully distinguish between the various lewd and lascivious acts Vasquez committed.  The instruction clearly referenced lewd and lascivious acts "other than the act for which he has been charged."  The instruction also provided that if the jury decided Vasquez committed the "*uncharged offense or offenses*," it may conclude he was disposed to commit sexual offenses and therefore likely to commit the "*acts charged*."  Vasquez fails to explain how this language inadequately distinguished the "conceded" lewd and lascivious act that formed the basis of the charges in this case (i.e., the rape) from the other lewd and lascivious acts that occurred on prior dates (i.e., the daily molestation).  The instruction clearly distinguished the uncharged and charged acts and was therefore not erroneous.  Vasquez could have requested the court add clarifying language to the instruction, but he did not.

In sum, we conclude Vasquez's challenges to the special allegation verdict form and to the trial court's response to the jury's questions were not preserved for appeal, and further conclude the propensity instruction was not erroneous.  We therefore hold that no cognizable error operated to reduce the prosecution's burden of proof on counts 1 and 3 or on the enhancement allegations.

**DISPOSITION**

The conviction in count 3 (aggravated sexual assault) is vacated.  In all other respects, the judgment is affirmed.

SNAUFFER, J.

WE CONCUR:

SMITH, Acting P.J.

DE SANTOS, J.

20.